# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STUDENTS AND PARENTS FOR PRIVACY, a voluntary unincorporated association; C.A., a minor, by and through her parents and guardians, S.M. and R.M.; N.G., a minor, by and through her parent and guardian, R.G.; A.V., a minor, by and through her parents and guardians, T.V. and A. T.V.; and B.W., a minor, by and through his parents and guardians, D.W. and V.W., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION; JOHN B. KING, JR., in his official capacity as United States Secretary of Education; UNITED STATES DEPARTMENT OF JUSTICE; LORETTA E. LYNCH, in her official capacity as United States Attorney General; and SCHOOL DIRECTORS OF TOWNSHIP HIGH SCHOOL DISTRICT 211, COUNTY OF COOK AND STATE OF ILLINOIS. <br><br> Defendants. | Civil Action No. 1:16-cv-04945 <br><br> Hon. Jorge L. Alonso |

**DECLARATION OF PARENT A
IN SUPPORT OF MOTION TO INTERVENE BY STUDENT A, A MINOR CHILD,
BY AND THROUGH HER MOTHER AND LEGAL GUARDIAN, PARENT A**

I, Parent A, declare:

1. I am the mother and legal guardian of the high school student referenced as "Student A" throughout the complaint in the above-captioned case. Student A's motion to intervene in the case is brought through me on her behalf. I am over eighteen (18) years of age, and if called as a witness, I could and would testify competently as to the matters set forth below.

2. Student A is a seventeen year-old girl currently in her junior year of high school at William Fremd High School in Palatine, Illinois, which is part of Township High School District 211 ("District 211"). Student A will be in Fremd High School's senior class during the 2016-2017 school year and expects to graduate in May 2017.

3. Student A is an outgoing young woman who receives good grades, participates on athletic teams and in various clubs at Fremd High School, and is close with her friends and family.

4. Student A is transgender. Although designated male at birth, Student A has identified as female from a young age. She came out to her father and me as transgender in spring 2011, when she was in seventh grade. With the help and support of her father and I, and under the supervision of medical providers, Student A transitioned to living consistently with her female gender identity in the fall of 2012, as she began her eighth grade year. She was diagnosed with Gender Dysphoria in January 2013.

5. As part of her treatment for Gender Dysphoria, Student A's [health care provider] has recommended and prescribed that she live her life full-time as female. Accordingly, Student A has continued to live her life full-time as a girl by dressing as female, using a female name and pronouns, and using female bathrooms and any other facilities that are divided by sex. Student A completed a legal name change in May 2013, and obtained a passport listing her gender as female in July 2013. She has also taken steps to transition medically.

6. As Student A began high school at Fremd High School in fall of 2013, the three of us (Student A, her father and I), at times with the support and assistance of the Illinois Safe Schools Alliance, had several discussions with administrators at both Fremd High School and

District 211 to request that Student A be treated by the school as a female in all ways, including participation on girls' athletic teams and access to the girls' restrooms and locker room.

7. Representatives from Fremd High School and District 211 told us that Student A would be allowed to use the girls' restrooms and participate on girls' athletic teams, but that she would not be allowed to use the girls' locker room to change for her daily gym class or for athletic team practices or competitions. Instead, Student A was asked to use restrooms separate and apart from the locker room to change for gym and her athletic teams.

8. This ban from using the girls' locker room caused several logistical problems for Student A. One of the restrooms that she changed in was located far away from the locker room and was locked, and Student A sometimes had to locate someone to unlock it for her before she could change, which caused her to be late to class. Student A also, in trying to avoid entering the gym from a different door than the other students, had to take longer routes to get to the gym.

9. Student A was also allowed to use the nurse's office, and later, a restroom closer to the locker room, but even then Student A was not able to keep her belongings in the locker area where other girls kept their belongings. This would sometimes force Student A to keep her belongings in her car during after-school activities, again causing her inconvenience and making her late for participating in athletic teams. When Student A did go into the girls' locker room, to, for example, put her belongings in a locker, she was reprimanded.

10. During the swim unit in Student A's gym class, separate changing arrangements in another restroom were again made. Unlike the other female students, who had standard showers in a locker room, Student A only had access to a "rinse" shower and limited amenities to get ready after class. The rinse shower was less private, located in a narrow hallway through which all students had to pass to enter or exit the girls' swimming locker room.

11. On another occasion, Student A did not receive an announcement made in the locker room, stating that students would not have to dress for gym. Student A was embarrassed when she arrived in her gym uniform while others wore their street clothes, and had to go and change again.

12. The most important aspect of this, however, was how difficult this was for Student A on an emotional level. Although she would put on a brave face in front of other students, the stress and trauma of having to deal with these issues would frequently lead to her expressing anxiety and frustration at being treated differently by the school. Student A would talk about feeling alone and isolated in having to be in a separate space for changing, and feeling singled out as being different from other girls. Being singled out was embarrassing for her, and invited questions and speculation about her transgender status from other students. Student A would often not change for gym class, miss gym class, or even miss school related to her feelings of being isolated, upset and embarrassed related to this issue.

13. Student A, her father and I continued to try and get Student A access to the girls' locker room. After Fremd High School and District 211 confirmed their position that she would not be allowed such access, we engaged lawyers from the American Civil Liberties Union, who wrote several letters to Fremd High School and District 211 on our behalf requesting that Student A be allowed to change in the girls' locker room.

14. On December 5, 2013, when Fremd High School and District 211 would not change their position, the ACLU filed a discrimination complaint on our behalf with the Chicago Office of the Office for Civil Rights ("OCR") of the United States Department of Education. Student A and I fully participated in OCR's investigation. During the investigation, we learned

that District 211 had taken the position with OCR that they had not discriminated against Student A in prohibiting her from accessing the girls' locker room.

15. In June 2015, OCR advised us and District 211 of its findings. OCR had found that the District violated the Title IX regulation by, on the basis of sex, excluding Student A from participation in and denying her the benefits of its education program, providing her different benefits or benefits in a different manner, subjecting her to different rules of behavior, and subjecting her to different treatment. OCR gave District 211 a 90-day period before the findings would be released to try to reach an agreement with OCR to resolve District 211's Title IX violation voluntarily. In October 2015, District 211 stated publicly it would not resolve the Title IX violation voluntarily.

16. On November 2, 2015, OCR issued publicly the correspondence containing its findings that District 211 was in violation of Title IX. OCR found that the evidence showed that, as a result of District 211's denial of access to the girls' locker room, Student A not only received an unequal opportunity to benefit from District 211's educational program, but also experienced an ongoing sense of isolation and ostracism throughout her high school enrollment at the Fremd High School. OCR's findings can be found at http://www.aclu-il.org/wp-content/uploads/2015/12/2015-11-02-DOE-Findings.pdf, which was last visited on May 21, 2016.

17. On December 3, 2015, we were notified that OCR and District 211 reached a settlement and signed a resolution agreement. This agreement provided that Student A was to be provided equal access to the girls' locker room at Fremd High School. District 211 was to provide OCR with documentation of its compliance by January 15, 2016. The resolution

5

agreement can be found at http://www.aclu-il.org/wp-content/uploads/2015/12/OCR-Agreement-12-2-2015.pdf, which was last visited on May 21, 2016.

18. Since January 15, 2016, Student A has been allowed to use the girls' locker room at Fremd High School. For reasons unrelated to any issue in this case, she did not begin using the locker room with regularity until early March 2016.

19. During the time that Student A was allowed full access to the girls' locker room, she was noticeably happier, more confident and more comfortable going to school. She talked about feeling more bonded with the other girls at school, and more connected to the athletic teams on which she participates. She no longer felt like she was missing out on part of these important high school experiences. She was more willing and eager to participate in after school activities. Student A talked about her access to the locker room making a big difference in everyone's acceptance of her at school, as it signaled to others that Student A should be treated equally with other girls.

20. Student A was devastated when she learned of this lawsuit and the threat of having the locker room access that she just gained taken away again. Having to use separate restrooms to change her clothes instead of the girls' locker room inconvenienced, stigmatized and embarrassed Student A, and led to her being very upset on a regular basis, disrupting her education and her overall self-assurance. Student A is not only concerned that the lawsuit will take away her locker room access, but also her ability to use the girls' restrooms at school, which she has always been allowed to use. Denying Student A access to the girls' restrooms would cause Student A inconvenience, embarrassment, and distress.

21. This lawsuit brought the entire controversy back to the attention of the students at Fremd High School. Since the lawsuit was filed, Student A has been reluctant to use the girls' locker room, attending gym class in her street clothes or missing gym class or school altogether.

22. Student A's use of the girls' locker room is essential for affirming her female gender identity and is consistent with that identity and with her prescribed course of medical treatment for Gender Dysphoria. We have observed that the more she is treated equally with the other girls, the more joyful, confident, and free she is to be herself. Continuing to allow her equal access to the girls' locker room and restrooms will improve Student A's emotional well-being so that she can achieve her full potential and will help others be more accepting of her.

I declare under penalty of perjury of the laws of the United States that to the best of my knowledge, information, and belief, the foregoing is true and correct. Executed in *Palatine* Illinois on May 24, 2016.