# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STUDENTS AND PARENTS FOR PRIVACY, a voluntary unincorporated association; C.A., a minor, by and through her parent and guardian, N.A.; A.M., a minor, by and through her parents and guardians S.M. and R.M.; N.G., a minor, by and through her parent and guardian R.G.; A.V., a minor, by and through her parents and guardians T.V. and A.T.V.; and B.W., a minor, a minor, by and through his parents and guardians, D.W. and V.W.,<br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION; JOHN B. KING, JR., in his official capacity as United States Secretary of Education; UNITED STATES DEPARTMENT OF JUSTICE, LORETTA E. LYNCH, in her official capacity as United States Attorney General, and SCHOOL DIRECTORS OF TOWNSHIP HIGH SCHOOL DISTRICT 211, COUNTY OF COOK AND STATE OF ILLINOIS,<br>    Defendants.<br><br>and<br><br>STUDENTS A, B, AND C, by and through their parents and guardians, Parents A, B, and C; and the ILLINOIS SAFE SCHOOLS ALLIANCE,<br>    Intervenors-Defendants | Case No. 16-cv-4945<br><br>Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

For the following reasons, Plaintiffs' objections [146] to the Report and Recommendation of the Magistrate Judge [134] are overruled and the Report and Recommendation is adopted.

1

*Background*

Plaintiffs, Students and Parents for Privacy, an unincorporated association, and five current or prospective students of Township High School District 211, brought this action against the United States Department of Education, the United States Department of Justice (together with the Secretary of Education and the Attorney General collectively, "the Federal Defendants"), and the School Directors of Township High School District 211 ("District 211" or "the District") challenging the District's policy of allowing transgender students to use the restrooms consistent with their gender identity, a federal rule requiring schools in the United States to allow students to use sex-segregated facilities consistent with their gender identity, and an agreement that the Department of Education had entered into with District 211 by which Student A, a transgender girl, was allowed to use the girls' locker room at William Fremd High School. [Dkt 1.] Plaintiffs alleged that the Department of Education had violated the Administrative Procedure Act, 5 U.S.C. § 500, *et seq.*, in issuing the rule, and that the policy and the agreement violate Girl Plaintiffs'[1] rights to privacy and to an equal education. Plaintiffs also brought claims for violation of their parental right to direct the education and upbringing of their children, the Illinois and Federal Religious Restoration Act, and the Free Exercise of the First Amendment. The factual background of the case is laid out in great detail in the Magistrate Judge's Report and Recommendation, and is not repeated here. [Dkt 134.]

Plaintiffs moved for a preliminary injunction seeking to require the District to segregate restrooms and locker rooms on the basis of students' biological sex which Plaintiffs consider to be sex assigned at birth, by enjoining the federal rule, enjoining the District's policy, and enjoining the agreement regarding Student A. [Dkt 21.] The motion was premised on Plaintiffs'

---

[1] For convenience and consistency, the Court adopts the terms Plaintiffs use to describe themselves, like "Girl Plaintiffs" and "Student Plaintiffs."

2

Administrative Procedure Act claim, their constitutional privacy claim, and their claim under Title IX (Counts I, II, and IV). Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the motion was referred to the Magistrate Judge for a report and recommendation. [Dkt 24, 26.]

Shortly after Plaintiffs filed their motion, District 211 sought leave to conduct discovery on it. Plaintiffs successfully opposed the District's efforts, arguing that their claims rested on a facial challenge and not on any specific interaction in any particular restroom or locker room between any plaintiff and Student A or anyone else, but only on the fact that Student A, who Plaintiffs call a biological boy, is or could be present in the girls' restroom and locker room. [Dkt 50 at 4-5.] During oral argument on the motion, Plaintiffs narrowed the scope of their requested relief from enjoining the federal rule outright to only asking that the Federal Defendants be enjoined from "further application of the rule to force District 211 to comply with it in the operation of its facilities." [Dkt 127 at 155.]

Also during the pendency of the motion, Student A, along with Students B and C, by and through their parents and legal guardians, and the Illinois Safe Schools Alliance, were allowed to intervene in the case. [Dkt 56.]

After extensive briefing and oral argument, the Magistrate Judge issued a comprehensive and well-reasoned report in which he recommended denying Plaintiffs' motion upon a finding that they had not made any of the threshold showings for a preliminary injunction. [Dkt 134.] Specifically, he found that Plaintiffs had failed to demonstrate a likelihood of success on the merits that the Administrative Procedure Act had been violated, that the District or the Federal Defendants were violating Plaintiffs' constitutional right to privacy, or that the District was violating Title IX by permitting transgender students to use restrooms consistent with their gender identity and allowing Student A to use the girls' locker room. Even if Plaintiffs had

3

shown a likelihood of success on the merits, the Magistrate Judge found, they still would not be entitled to an injunction because they had not shown they were likely to suffer irreparable harm or that they lacked an adequate remedy at law. Because he found that the Plaintiffs had not made the threshold showings necessary for an injunction to issue, the Magistrate Judge found it unnecessary to engage in a balancing analysis. Plaintiffs object to the Magistrate Judge's decision, and the parties have submitted briefs detailing their respective positions.

While the objections were pending, several significant developments occurred, substantially narrowing the scope of the parties' dispute. First, Student A graduated from Fremd High School and the Locker Room Agreement pertaining to her was accordingly terminated. [Dkt 185-1.] Second, the United States Department of Education Office for Civil Rights and the United States Department of Justice Civil Rights Division withdrew the administrative guidance that Plaintiffs had challenged in this action, and issued a joint guidance letter instructing that the views conveyed in the earlier materials should not be relied upon while the issue is under further consideration. [Dkt 165-1.] In light of the withdrawal of those materials, Plaintiffs voluntarily dismissed the Federal Defendants, thereby eliminating their Administrative Procedure Act claim, and mooting much of their motion and objections to the Magistrate Judge's Report and Recommendation. [Dkt 178, 179.]

*Standard of Review*

When a party raises specific objections to a portion of a Magistrate Judge's report and recommendation, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

*Discussion*

A preliminary injunction is an extraordinary remedy that is available only when the movant shows clear need. *See Turnell v. Centimark Corp.*, 796 F. 3d 656, 661 (7th Cir. 2015). A two-step inquiry applies when determining whether such relief is required. *Id.* First, the party seeking the preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, it will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) the party has a reasonable likelihood of success on the merits. *See id.* at 661–62. If the movant makes the required threshold showing, then the court proceeds to a balancing analysis in which it considers: (4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the "public interest"). *See id.* at 662. "The court weighs the balance of potential harms on a 'sliding scale' against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id.* at 662.

Given the developments since the issuance of the Magistrate Judge's opinion, only a portion of Plaintiffs' claims remain at issue. Because the Federal Defendants have been dismissed, Plaintiffs' motion as to the federal rule embodied in the guidance documents is now moot. Likewise, because Student A has graduated and the Locker Room Agreement has been terminated, this aspect of Plaintiffs' claims is also moot. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1984) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continued, present adverse effects" (internal quotation omitted); *Young v. Lane*, 922 F.2d 370, 373-74 & n. 8 (plaintiffs

request for injunctive relief on exercise of religion claim mooted by transfer from prison facility where challenged restrictions occurred). Plaintiffs resist this result by pointing to Intervenor Parent B's declaration that Student B may want to use a District 211 locker room consistent with his gender identity [dkt 32-2], and a recently filed charge of discrimination brought by a transgender student who was denied access to the locker room consistent with her gender identity at a District 211 school [dkt 186-1].[2] The fact that other transgender students want or might want to use sex-segregated facilities consistent with their gender identity, however, neither suggests that the injury of which Plaintiffs complained is continuing or that the injury complained of will be repeated. In any event, even if it could be said that Plaintiffs challenge to the Locker Room Agreement remains live, the Magistrate Judge correctly determined that Plaintiffs had not shown a reasonable likelihood of success on the merits that allowing transgender students access to sex-segregated facilities based on their gender identity violates Title IX or the privacy rights of the Student Plaintiffs with whom such facilities are shared, whether such facilities are restrooms or locker rooms.

With certain exceptions, Title IX provides:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a). Because Title IX allows an educational institution to provide "separate toilet, locker room, and shower facilities on the basis of sex," so long as they are "comparable to such facilities provided for students of the other sex," 34 C.F.R. § 106.33, Plaintiffs say, a policy that allows a transgender student access to sex-segregated facilities based on their gender identity improperly hinders non-transgender students' equal access under Title IX and burdens their

---

[2] Plaintiffs' motion to supplement the record with this charge of discrimination [dkt 186] was taken under advisement, and is hereby granted.

privacy rights by forcing them to seek privacy protections other than in those facilities. According to Plaintiffs, District 211's actions create a sexually hostile environment for Girl Plaintiffs and negatively impact their access to educational opportunities, benefits, programs, and school activities because Girl Plaintiffs are scared, worried, or embarrassed about the possibility of being seen or heard by a transgender student while using the separate restrooms Title IX's implementing regulations specifically allow. Plaintiffs assert that the Magistrate Judge erred in finding the use of the term "sex" ambiguous in Title IX, thereby sanctioning an interpretation of sex that includes gender identity. Plaintiffs heavily premised the arguments supporting their motion and objections on *Ulane v. Eastern Airlines Inc.*, 742 F.2d 1081 (7th Cir. 1984), a Seventh Circuit decision denying a cause of action for discrimination on the basis of transsexualism upon a finding that Congress intended a narrow interpretation of the term "sex" in Title VII. [*See* dkt 23, 146.] Embracing that rationale, Plaintiffs insist Title IX does not require the provision of facilities consistent with a transgendered student's gender identity, because "sex" means only the "binary, objectively verifiable" markers of a sexually reproducing species *i.e.*, "our 'privates.'" [*E.g.*, dkt 146 at 3-4.]

As the Magistrate Judge correctly recognized, however, and as the Seventh Circuit has since conclusively held, federal protections against sex discrimination are substantially broader than based only on genitalia or chromosome. In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the Court held that discrimination based on sex stereotypes is cognizable under Title VII. *See Price Waterhouse*, 490 U.S. at 242 (finding Title VII was "intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes"). In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), the Court reiterated an expansive approach to Title VII, declaring, "statutory prohibitions often go beyond the principal evil to

7

cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale*, 523 U.S. 79 (finding Title VII prohibits same-sex sexual harassment regardless of intent even though it was not the principal concern of Congress when it enacted the statute).

Based in part on these authorities, courts around the country have declined to follow the reasoning of *Ulane* in the three decades since its release. *See, e.g., Glenn v. Brumby*, 663 F.3d 1312, 1317 & n. 5 (11th Cir. 2011) (noting *Price Waterhouse* eviscerated *Ulane*'s reasoning, and finding "discrimination against a transgender individual because of her gender-nonconformity is sex discrimination"); *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004) (recognizing transgender plaintiff's sex-stereotyping claim since *Price Waterhouse* established Title VII's reference to 'sex' "encompasses both the biological differences between men and women, and gender discrimination, that is, discrimination based on a failure to conform to stereotypical gender norms"); *Rosa v. Park W. Bank & Trust Co.*, 214 F.3d 213 (1st Cir. 2000) (recognizing claim under Equal Credit Opportunity Act based on sex-stereotyping); *Schwenk v. Hartford*, 204 F.3d 1187, 1199-1203 (9th Cir. 2000) (applying *Price Waterhouse* to recognize transsexual plaintiff's Gender Motivated Violence Act claim).

Moreover, while the objections were pending, the Seventh Circuit twice rejected the narrow interpretation of "sex" that Plaintiffs forward here. In *Hively v. Ivy Tech Cmty. College of Indiana*, 853 F.3d 339 (7th Cir. 2017) (*en banc*), the court held that plaintiff stated a "paradigmatic sex discrimination" claim by alleging her employer had failed to promote her because she was a lesbian. *Id.* at 345. Applying *Price Waterhouse* and its progeny, the Seventh Circuit reasoned, "Any discomfort, disapproval or job decision based on the fact that the complainant – woman or man – dresses differently, speaks differently, or dates or marries a same

sex partner, is a reaction purely and simply based on sex. That means it falls within Title VII's prohibition against sex discrimination, if it affects employment in one of the specified ways." *Id.* at 347.

In *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Education*, 858 F.3d 1034 (7th Cir. 2017), the Seventh Circuit similarly applied a theory of sex stereotyping to find that Title IX's prohibition on sex discrimination prohibits treating a transgender student differently than non-transgender students. In *Whitaker*, a transgender student alleged that a policy barring him from using the boys' restroom after he started his female-to-male transition violated Title IX and the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 1039. The District Court agreed, granting him injunctive relief, and the Seventh Circuit affirmed. *Id.* Rejecting arguments similar to those forwarded by Plaintiffs here, the Seventh Circuit found that a school policy that subjects a transgender student to different rules, sanctions, and treatment than non-transgender students violates Title IX. *Id.* at 1049-50.

The Seventh Circuit made clear in *Whitaker* that its earlier decision in *Ulane* could not "foreclose . . . transgender students from bringing sex-discrimination claims based upon a theory of sex-stereotyping as articulated . . . in *Price Waterhouse*." *Id.* at 1047 (internal citation omitted). Discrimination against transgender individuals is sex discrimination under *Price Waterhouse*, the Seventh Circuit explained, because "[b]y definition, a transgender individual does not conform to the sex-based stereotypes of the sex that he or she was assigned at birth." *Id.* at 1048. Following *Price Waterhouse* and its progeny, the Court reasoned that a "policy that requires an individual to use a restroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance which in turn violates Title IX." *Id.* at 1049. Providing a gender-neutral alternative was insufficient to relieve the school district

9

from liability under Title IX, the Seventh Circuit explained, because it was "the policy itself which violates the Act." *Whitaker*, 858 F.3d at 1050.

Although the arguments considered in *Whitaker* mirror those made by Plaintiffs here, Plaintiffs try to distinguish *Whitaker* as only "superficially similar" since it only involved restroom access, and insist that the decision is so "astonishingly wrong" that its reasoning undercuts its "worth even as persuasive authority." [Dkt 180 at 5, 16, 19.] Even if locker room access were still a live issue, however, it provides no logical basis to so distinguish *Whitaker*'s rule. Nothing in the Seventh Circuit's analysis suggests that restrooms and locker rooms should be treated differently under Title IX or that the presence of a transgendered student in either, especially given additional privacy protections like single stalls or privacy screens, implicates the constitutional privacy rights of others with whom such facilities are shared. Plaintiffs' critiques notwithstanding, *Whitaker* reflects a straightforward application of the long-standing line of sex stereotyping decisions, fully in line with the Supreme Court's guidance on sex discrimination claims.

The fact that Plaintiffs premised their action in part on certain Student Plaintiffs' complaints about the District's policy whereas in *Whitaker* the school district defended their policy on similar privacy claims on behalf of non-party students also does not distinguish the cases. This is clear from Plaintiffs' continued assertion of the arguments rejected in *Whitaker*, and their attacks on the Seventh Circuit's reasoning. [*See* dkt 180 (calling the school district's defense of its policy "proper," and "sound," and the Seventh Circuit's decision replete with "numerous errors" rendering it "incorrect as a matter of law").] Plaintiffs' challenge notwithstanding, *Whitaker* nevertheless controls and confirms that the Magistrate Judge was correct in his assessment of Plaintiffs' Title IX claim. *See Reiser v. Residential Funding Corp.*,

10

380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts.")

The Seventh Circuit's decision in *Whitaker* also makes clear that the Magistrate Judge correctly determined that Plaintiffs had not established a likelihood of success on their constitutional privacy claim. Although initially framed even more broadly, Plaintiffs ultimately posed their privacy claim on the motion as whether "letting a biological male use the girls' locker room and restrooms, and so subjecting Girl Plaintiffs to the risk of compelled exposure of their bodies to the opposite biological sex, violate Girl Plaintiffs' constitutional right to privacy?" [Dkt 50 at 6.] While the Supreme Court has not recognized a generalized right to privacy, it has extended substantive due process protection of privacy interests in certain limited circumstances. *See, e.g., Lawrence v. Texas*, 539 U.S. 558, 577-78 (2003) (recognizing individual decisions about physical intimacy are a form of liberty protected by Due Process Clause of Fourteenth Amendment); *Roe v. Wade*, 410 U.S. 113, 153 (1973) (right to privacy "found in the Fourteenth Amendment's concept of personal liberty . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy"). The Supreme Court and the Seventh Circuit have both cautioned that "the scope of substantive due process is very limited." *Belcher v. Nelson*, 497 F.3d 742, 753 (7th Cir. 2007) (citing *Washington v. Glucksburg*, 521 U.S. 702 (1997)).

In a substantive due process analysis, the court requires a careful description of the asserted interest at issue. *See Christensen v. Cnty of Boone*, 483 F.3d 454, 462 (7th Cir. 2007). It must then be determined whether the asserted interest is "fundamental," or whether "it is so deeply rooted and sacrosanct that no amount of process would justify its deprivation." *Id.* at 462. Finding that Plaintiffs' formulation of the issue overstated the actual interest they seek to vindicate, the Magistrate Judge more narrowly framed the issue as whether "high school students

11

have a constitutional right not to share restrooms or locker rooms with transgender students whose sex assigned at birth is different from theirs?" [Dkt 134 at 45.]

Plaintiffs' objection to this formulation as having ignored the privacy implications of "comingling the sexes" and their insistence that giving a transgender student access to the restrooms of the sex with which she or he identifies serves only to "affirm" a transgender student's perception of himself, while violating Student Plaintiffs' constitutional right to privacy, flies in the face of *Whitaker*. The school district in *Whitaker* unsuccessfully defended its policy with the same argument as Plaintiffs advance here, *i.e.*, that allowing transgender students access to restrooms based on their gender identity infringes on the privacy rights of other students with whom they do not share biological anatomy. [Dkt 180 at 1 (discussing *Whitaker*, 858 F.3d at 1052).] The Court here is similarly unpersuaded. This case does not involve the forced or extreme invasions of privacy that the courts addressed in the cases cited by Plaintiffs. Further, the restrooms at issue here have privacy stalls that can be used by students seeking an additional layer of privacy, and single-use facilities are also available upon request. [Dkt 78-1.] Given these protections, there is no meaningful risk that a student's unclothed body need be seen by any other person.

Further, Plaintiffs' assumption that the development of additional facts in *Whitaker* would have changed its outcome is belied by the rationale of the Seventh Circuit's decision. There is no suggestion in *Whitaker* that undeveloped facts were outcome-determinative. Rather, the Court rejected as unsound parallel privacy arguments as those asserted here, observing:

> A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of an overly curious student of the same biological sex who decides to sneak glances at his or her classmates performing bodily functions. Or for that matter, any other student who uses the bathroom at the same time. Common sense tells us that the communal restroom is

> a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall.

858 F.3d at 1052. Further, their current argument notwithstanding, Plaintiffs made clear that their challenge to District 211's policy was not based on any individual complaints but was instead a facial one. As Plaintiffs put it in resisting the District's efforts to obtain discovery and as they repeat despite their argument in their most recent briefs, Plaintiffs frame the issue in this action as whether "the District 211 Defendants' official, intentional intermingling of the sexes within privacy facilities violates the constitutional right to bodily privacy and provisions of Title IX." [Dkt 185 at 6.]

Similarly unpersuasive is Plaintiffs' emphasis on the dissent's reasoning in the Fourth Circuit's *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, a decision regarding a transgender student's access to sex-segregated facilities and the fact that the Supreme Court recalled the mandate and stayed an injunction there pending the filing and disposition of a writ of certiorari. *See G.G. ex rel. Grimm*, 822 F.3d 709 (4th Cir. 2006), *mandate recalled and stayed, Gloucester Cty. Sch. Bd. v. G.G. ex rel. Grimm*, 136 S. Ct. 2442 (2016), *cert. granted*, No. 16-273 (Oct. 28, 2016). *Whitaker* is binding on this Court, and the stay in *G.G.* only preserved the status quo. It does not create a privacy right of the nature that Plaintiffs assert.

At the time the Magistrate Judge rendered his decision, the law in the Seventh Circuit was in flux. Plaintiffs' protestations notwithstanding, it is now clear, and binding. *See Reiser*, 380 F.3d 1029; *Matter of Skupniewitz*, 73 F.3d 702, 705 (7th Cir. 1996). For the reasons discussed by the Magistrate Judge and herein, Plaintiffs have not carried their burden of establishing a reasonable likelihood of success on either their Title IX or their constitutional privacy claims.

13

Further, even if Plaintiffs had shown a likelihood of success on the merits, they would still not be entitled to a preliminary injunction because they have not shown they are likely to suffer irreparable harm in the absence of an injunction, or that they lack an adequate remedy at law in the event that they ultimately succeed on their claims. Both before the Magistrate Judge and in their objections, Plaintiffs argue that irreparable harm may be presumed if they establish a likelihood of success on their constitutional claim, and that they will suffer such harm if they are denied access to "truly private girls' locker rooms and bathrooms." [Dkt 23 at 35, 146 at 36.] But Plaintiffs have not established a likelihood of success either on their constitutional privacy or their Title IX claims, and the only specific harm to which they point is the risk of running late to class by using alternate restrooms to avoid sharing with a transgender student and the "embarrassment, humiliation, anxiety, fear, apprehension, stress, degradation, and loss of dignity" allegedly felt by Student Plaintiffs arising from such sharing. [Dkt 1 ¶ 11.] As the Magistrate Judge correctly found, the mere inconvenience of using remote facilities does not constitute irreparable harm, the risk of being late to class has not been shown to have any meaningful impact on Student Plaintiffs' education, and the emotional damages of which Plaintiffs complain are commonly compensated by monetary awards. *See Bhd. of Locomotive Engineers & Trainmen v. Union Pacific R.R. Co.*, No. No. 10 C 8296, 2011 WL 221823 at *5 (N.D. Ill. Jan. 21, 2011).

Notably, District 211's practice of allowing transgender students to use the restrooms of the gender with which they identify was implemented nearly three years before the filing of this action. As the Magistrate Judge observed, either Student Plaintiffs did not notice that transgender students were using restrooms consistent with their gender identity, or they knew and tolerated it for several years. The passage of time therefore further undermines Plaintiffs'

claim of irreparable harm. This Court agrees with the Magistrate Judge's assessment, "[t]here is no indication that anything has negatively impacted Girl Plaintiffs' education." [Dkt 134 at 76.]

Because the Magistrate Judge correctly found that Plaintiffs had not made any of the threshold showing required for a preliminary injunction to issue, Plaintiffs' objections to the Report and Recommendation are overruled, and their Motion for a Preliminary Injunction is denied.

## CONCLUSION

For all of the above mentioned reasons Plaintiffs' objections [146] to the Report and Recommendation of the Magistrate Judge [134] are overruled and the Report and Recommendation is adopted. Plaintiff's Motion for a Preliminary Injunction [21] is denied. Plaintiffs' Motion for Leave to Supplement the Record [186] is granted. Defendants shall answer or otherwise respond to Plaintiffs' complaint by January 30, 2018. A status hearing is set for February 8, 2018 at 9:30 a.m.

Date: 12/29/2017

Jorge L. Alonso
United States District Judge